IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| COSTILLO ARTEEN JOHNSON, | ) | |
| a.k.a., ASUME BJAMBE AUSIR IMHOTEP-EL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:03-CV-892-WHA |
| | ) | [WO] |
| | ) | |
| BRYAN GAVINS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a complaint filed under 42 U.S.C. § 1983 by Costillo Arteen Johnson ["Johnson"], a state inmate, against Bryan Gavins ["Gavins"], Shawn Logan ["Logan"] and Jason Baxley ["Baxley"], correctional officers at the Easterling Correctional Facility ["Easterling"], Gwendolyn Mosley ["Mosley"], the warden of Easterling, and Kenneth Jones ["Jones"], an assistant warden at such facility. In the complaint, as amended, Johnson asserts that the defendants disciplined him in retaliation for submitting an affidavit for arrest alleging harassment by Gavins and for filing this lawsuit. He likewise contends that the defendants denied him due process in various disciplinary proceedings. Johnson further complains that Gavins obstructed his access to the court. Johnson seeks a declaratory judgment, injunctive relief and monetary damages.

The defendants filed special reports and supporting evidentiary materials addressing Johnson's claims for relief. Pursuant to the orders entered in this case, the court deems it

appropriate to treat the defendants' reports as a motion for summary judgment. *See Order of October 15, 2003 - Court Doc. No. 13*; *Order of March 5, 2004 - Court Doc. No. 29*; and *Order of April 8, 2004 - Court Doc. No. 34*. Therefore, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof and Johnson's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. DISCUSSION

On November 21, 2002, Johnson "was present in Easterling law library conducting research" when Gavins, the security supervisor of the law library, made derogatory comments about inmate lawsuits. *Plaintiff's Complaint - Facts and Allegations* at 3. The following day, Johnson went to the law library to continue his research. After a few minutes, Gavins ordered that all inmates in the law library report to their assigned dorm for an institutional shakedown. Johnson complied with this order. After completion of the shakedown, Johnson returned to the law library. A verbal altercation ensued between Johnson and Gavins which resulted in Gavins threatening to issue Johnson a disciplinary for being in an unauthorized area. Gavins, however, did not undertake any disciplinary action against Johnson at this time.

Based on these incidents, Johnson "filed an 'affidavit for arrest warrant' . . . for harassment [against Gavins on December 2, 2002]. . . in the district attorney's office for

Barbour County . . ." *Id*. at 5; *December 15, 2003 Amendment to the Complaint - Facts and Allegations* at 2. In response to Johnson's harassment complaint, correctional officials conducted an internal investigation that revealed no wrongdoing on the part of Gavins. During this investigation, warden Mosley advised Johnson that the duties assigned to Gavins required that he "write disciplinaries on plaintiff . . . and other prisoner(s), if they came to the law library not being [in] compliance with the rules and regulations." *Plaintiff's Complaint - Facts and Allegations* at 7.

Johnson contends that on January 14, 2003 Gavins limited his time in the law library and on August 16, 2003 issued a behavior citation against him for violating the dress code in retaliation for filing the affidavit for arrest warrant with the district attorney of Barbour County. Johnson asserts that Gavins continued his retaliatory acts by initiating a disciplinary against him for assault on October 16, 2003. He further complains that defendants Logan and Jones denied him due process with respect to the disciplinary proceedings related to this charge. Johnson next contends that Gavins issued a fabricated disciplinary against him for threats on January 23, 2004 in retaliation for filing this lawsuit. He also complains that defendant Baxley, the hearing officer on the threats charge, conducted "a kangaroo disciplinary hearing . . ." *February 19, 2004 Amendment to the Complaint* at 3.

## II.  STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by the defendants, Johnson is required to produce some evidence which would be admissible at trial

3

supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Moreover, conclusory allegations by a plaintiff do not provide sufficient evidence to oppose a motion for summary judgment which is supported by affidavits and other relevant admissible evidentiary materials. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). "If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form demonstrates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11[th]

Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir. 1996).  Consequently, entry of summary judgment is appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c), *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Johnson relies exclusively on his conclusory allegations as to the ultimate issues of fact and has failed to present admissible evidence necessary to establish that there is a genuine issue of material fact in order to preclude summary judgment.

### III.  CLAIMS FOR RELIEF

#### A.  Retaliation

##### 1.  Relevant Facts

Johnson contends that the defendants charged him with a behavior citation and disciplinaries in retaliation for submitting an affidavit for arrest against Gavins and for filing this lawsuit.  The defendants, however, maintain that they disciplined Johnson solely because he violated institutional rules and regulations, not because they objected to either his

complaint against defendant Gavins or the filing of this case.  The affidavits and evidentiary

materials submitted by the defendants, including documents contained in Johnson's

institutional file, support this assertion:.

> *September 16, 2003 Affidavit of Gwendolyn C. Mosley* at 1-3 (On October 7,
> 2002,"Inmate  Johnson pled guilty to [conspiring with another inmate to
> receive funds for legal work Johson performed for the other inmate. *See
> October 4, 2002 Disciplinary Report No. 02-640*.] He was instructed that he
> was not to perform legal work for inmates in exchange for personal
> compensation and that he was not to possess property in his assigned locker
> that belonged to other inmates." The disciplinary actions and behavior citation
> resulted from the necessary "strict[] enforce[ment]" of rules by officer Gavins.
> "Inmate Johnson's involvement in legal endeavors does not exempt him from
> being held accountable for his compliance with institutional rules. . . .  Inmate
> Johnson's personal disrespect for and dissatisfaction wiht Officer Gavins is an
> attempt by inmate Johnson to remove an obstacle that stands in the way of his
> personal gain.");


> *September 16, 2003 Affidavit of Bryan Gavins* at 1-2 ("Inmate Johnson was
> disciplined for his violations of institutional rules and for no other reasons. .
> . . [I]nmate Johnson is attempting to use the cover of the court to violate rules
> and institutional regulations. . . .  Inmate Costillo Johnson's . . . problems are
> a matter of his own infringement of rules and regulations which govern[] his
> stay in the Alabama Department of Corrections.");

> *March 24, 2004 Affidavit of Bryan Gavins* at 3 ("I have written no
> disciplinaries against inmate Johnson for false charges.  All actions initiated
> against inmate Johnson were a result of his own negative behavior.");

> *Institutional Incident Report No. ECF-03-1046* (On August 16, 2003, officer
> Gavins, while monitoring inmates in the law library "observed Inmate Costillo
> Johnson, B/180165, with his pants sagging and his shirt not tucked in. . . .
> [Upon report of the incident to the shift commander,] Sgt. Lawson verbally
> reprimanded Inmate Johnson for his negative behavior."  Gavins issued "a
> behavior citation [to Johnson] for Rule Violation #85-Violation of Institutional
> Rules and Regulations . . . Rule #52 - Inmates will not be allowed to: wear

their pants off their hips (sagging).”);

*Institutional Incident Report No. ECF-03-1329* at 1-2 (“On October 14, 2003, Officer Bryan Gavins was assigned as the Law Library Officer. . . Inmate Costillo Johnson, B/180165, reported to Officer Gavins that he needed [a law book] off of the shelf beside Officer Gavins’ desk.  Officer Gavins advised Inmate Johnson that he could get the law book.  Inmate Johnson went to the back of the Law Library, and stated very loudly, ‘I better write that down, You will write someone up over some bull---- rules.’   Officer Gavins ordered Inmate Johnson to keep the noise down, or disciplinary action would be taken. Inmate Johnson became angry, and stated, ‘Hell no.  That is harassment.  I’m leaving.’  . . .  Johnson [subsequently] turned towards Officer Gavins and stated, ‘I will beat your ass, you want to fight me anyway!’  . . .  Inmate Johnson turned from Officer Gavins and grabbed the metal three hole puncher off of the counter with his right hand, turned back towards Officer Gavins and stated, ‘I will kill you, you white cracker!’  . . .  [This behavior resulted in] disciplinary action for rule violation #29 - Assault on a person associated with the Department of Corrections.”);

*Institutional Incident Report No. ECF-04-132* at 1-2 (On January 21, 2004, Gavins conducted law library rounds in the segregation unit.  He advised Johnson “to turn in his legal materials.  Inmate Johnson turned in his book, but no carbon paper, which was issued to him on January 17, 2004.  Officer Gavins advised Inmate Johnson that he had to turn in the two sheets of carbon paper with the Numbers 23-24 on the back.  Inmate Johnson stated that he could not find them . . . [and] tried to turn in two new sheets of carbon paper that had not been issued to him.  Officer Gavins advised Inmate Johnson that he (Gavins) needed the two sheets of carbon paper that had been issued to him with Numbers 23-24 on the back of them.  Inmate Johnson replied, ‘You are denying me legal access to the courts[.]  I am going to beat your ass if they ever put me back in Population, or if I get a chance in Segregation!’”  Based on Johnson’s negative behavior, Gavins initiated “disciplinary action [against Johnson] for Rule Violation #44 - Threats. . . .”).

## 2.  Retaliation Claim:  Analytical Standards

“The first amendment prohibits state officials from retaliating against prisoners for

exercising their right of free speech.  *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].  The first amendment also prohibits state officials from denying a prisoner's legal right of access to the courts.  *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Hall v. Sutton*, 755 F.2d 786 (11th Cir. 1985). . . .  The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech."  *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).      "In prison, of course, first amendment rights are not absolute.  *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights.  417 U.S. at 821."  *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).  "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.'  *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)) (internal quotation marks omitted). . . .  [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and . . . disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest."  *Hargis v. Foster*, 312 F.3d 404, 409-410 (9[th]Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).

The situation is somewhat complicated when the alleged act of retaliation is issuance

of a disciplinary or behavior citation as prisoners often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). Thus, federal courts must "carefully scrutinize retaliation claims" which challenge the issuance of disciplinaries against prison inmates. *Id.*; *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.").

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow*, 320 F.3d at 1248; *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002);

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *Woods*, 60 F.3d at 1166 (Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official

10

satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

### 3. *"Retaliation" Analysis*

Johnson alleges that the defendants retaliated against him for submitting a complaint against defendant Gavins and filing this civil action, thus satisfying his burden of establishing that he had engaged in protected activities. *See Donnellon*, 794 F.2d at 600-601. However, the defendants have demonstrated through affidavits and other relevant admissible evidence that the adverse actions about which Johnson complains resulted from his continuous violation of institutional rules. Johnson offers on only his conclusory allegation that the defendants' actions were retaliatory. As this court must "carefully scrutinize retaliation claims" arising from prison disciplinary actions, *Woods*, 60 F.3d at 1166, and access such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Johnson's conclusory allegation is insufficient to show that the reasons proffered by the defendants and substantiated by the evidentiary materials are pretextual. Consequently, the defendants are entitled to summary judgment on the retaliation claims as Johnson has failed to establish a causal relationship between his protected activities and the adverse actions taken against him. *Farrow*, 320 F.3d at 1249.

11

**B. The Due Process Claims**

*1. Relevant Facts*

On August 16, 2003, Gavins observed Johnson in the law library with his pants sagging and his shirt not properly tucked inside his pants. *Institutional Incident Report No. ECF-03-1046*. Based on this observation, Gavins issued a behavior citation to Johnson for wearing his "pants hanging off [his] hips (sagging)" in violation of applicable institutional rules. *August 16, 2003 Behavior Citation*. Correctional officials investigated this charge and approved the citation. *Id*. The sanctions imposed for this citation included thirty days loss of telephone, canteen and visitation privileges. *Id*.

On October 14, 2003, while in the law library, Johnson engaged in a verbal altercation with Gavins at which time Johnson stated "I will beat your ass, you want to fight me anyway! . . . Officer Gavins ordered Inmate Johnson to get his belongings and report to the Shift Commander's Office. Inmate Johnson turned from Officer Gavins and grabbed the three hole puncher off of the computer with his right hand, turned back towards Officer Gavins and stated, 'I will kill you, you white cracker!'" *Institutional Incident Report No. ECF-03-1329* at 1-2. Officer Gavins subsequently gained control of the situation and escorted Johnson out of the law library. As a result of this incident, Gavins charged Johnson with a violation of Rule #29, assault on a person associated with the department of corrections. *See October 16, 2003 Disciplinary Report No. 03-648* at 1 ("You, Inmate Costillo Johnson . . . did state to Officer Gavins, 'I will kill you, you white cracker,' while

12

holding a three hole puncher in your right hand as a weapon.").

On October 16, 2003, a correctional officer served Johnson with notice of the charge lodged against him for actions violative of Rule #29.  At this time, Johnson refused to sign for receipt of the disciplinary but requested the presence of two officers and an inmate as witnesses at the disciplinary hearing.  The hearing officer, defendant Logan, did not call the requested witnesses to testify as these individuals were "not present during [the] incident [and] had no knowledge" of the altercation at issue.  *Id*. at 2.  Upon completion of the noticed disciplinary hearing, defendant Logan adjudged Johnson guilty of the aforementioned offense.  *Id*. ("On 10/14/03, . . . Inmate Costillo Johnson . . . did state to Officer Gavins, 'I will kill you, you white cracker' while holding a three hole puncher...").  The sanctions imposed upon Johnson for this disciplinary infraction included forty-five days in disciplinary segregation, forty-five days loss of all privileges, referral to classification for custody review, and ninety days assignment to the restricted privilege dorm upon release from segregation. *Id*.  Defendant Jones approved the disciplinary action.

On January 21, 2004, Gavins entered the segregation unit to conduct law library rounds for the inmates confined in this area of the prison.  Upon reaching Johnson's cell, Gavins advised Johnson to return all legal materials previously provided to him, including "two sheets of carbon paper with the Numbers 23-24 on the back.  Inmate Johnson stated that he could not find them." *Institutional Incident Report No. ECF-04-132* at 1.  After continued dialogue between the parties regarding the numbered sheets of carbon paper, Johnson

13

became verbally combative and stated "I am going to beat your ass if they ever put me back in Population, or if I get a chance in Segregation!" *Id.* As a result of this incident, defendant Gavins charged Johnson with a violation of Rule #44, threats. *January 23, 2004 Disciplinary Report No. 04-04* at 1.

Officer Steve Stewart served Johnson with notice of the charge lodged against him for actions violative of Rule #44. *Id.* ("You, Inmate Costillo Johnson . . . did state to Officer Bryan Gavins that you would beat his ass if you returned to Population or if you had an opportunity while in Segregation."). Johnson again refused to sign for receipt of such notice but did sign the request for witnesses in which he sought the presence of three inmates as witnesses at the disciplinary hearing. *Id.* Upon completion of the noticed disciplinary hearing, including the receipt of testimony from Johnson's witnesses, the hearing officer, defendant Baxley, found Johnson guilty of the aforementioned offense. *Id.* at 2 ("On 01/21/04, . . . Inmate Costillo Johnson . . . did state to Officer Bryan Gavins that he would beat his ass if he (Johnson) returned to population or if he had an opportunity in segregation."). The sanctions imposed upon Johnson for this disciplinary infraction included loss of all privileges for forty-five days and placement in disciplinary segregation for forty-five days.

### 2. *"Due Process" Analysis*

Johnson complains that the defendants violated his due process rights during the proceedings related to the behavior citation and the disciplinaries imposed upon him for

assault and threats.  Specifically, Johnson maintains that the evidence presented failed to

support the findings of guilt and the hearing officers refused to consider the evidence

presented on his behalf.  He further complains that defendant Logan refused to call his

requested witnesses at the disciplinary hearing on the assault charge.  However, under the

circumstances of this case, these claims entitle Johnson to no relief.

The Due Process Clause of the Fourteenth Amendment provides that no state "shall

deprive any person of life, liberty, or property without due process of law."  Thus, the

Constitution is implicated only if a person is deprived of an interest protected by the Due

Process Clause.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court abandoned

the former methodology for determining the existence of a liberty interest.  Under such

previous case law, a federal court ascertained whether a state created a constitutionally

protected liberty interest by parsing language of statutes and regulations to determine if the

language constituted "an unmistakably mandatory character" placing "substantive limitations

on official discretion."  In its renunciation of this prior case law, the Court held that federal

courts must instead look to the nature of the deprivation rather than statutory or regulatory

language to determine if a state created a liberty interest.

> Following *Wolff*,[1] we recognize that States may under certain
> circumstances create liberty interests which are protected by the
> Due Process Clause. . .  But these interests will be generally
> limited to freedom from restraint which, while not exceeding the
> sentence in such an unexpected manner as to give rise to

---

[1]*Wolff v. McDonnell*, 418 U.S. 539 (1974).

> protection by the Due Process Clause of its own force, . . .
> nonetheless imposes atypical and significant hardship on the
> inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-484 (1995)(footnote added)(citations omitted).

Moreover, the Court specifically rejected the contention that any action taken by

correctional officials as a punitive measure encroaches upon a liberty interest protected under

the Due Process Clause. *Id.* at 484.

"Discipline by prison officials in response to a wide range of misconduct falls within

the expected parameters of the sentence imposed by a court of law." *Sandin,* 515 U.S. at

485. The loss of privileges, assignment to a restricted privilege dorm and placement in

segregation for short periods of time "though concededly punitive, do[] not represent a

dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff.

*Id.* Moreover, under the facts of this case, the aforementioned sanctions fail to "impose[]

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Id.* at 484. Thus, Johnson's theory of liability is frivolous within the meaning of 28

U.S.C. § 1915(e)(2)(B)(i), *see Neitzke v. Williams*, 490 U.S. 319 (1989),[2] and the defendants

are therefore entitled to summary judgment on the due process claims.

### C.  The Fabricated Charges Claims

Johnson asserts that the behavior citation and disciplinary charges lodged against him

---

[2]Although *Neitzke* interpreted the provisions of 28 U.S.C. § 1915(d), the predecessor to § 1915(e)(2), the analysis contained therein remains applicable to the present statute.

resulted from false accusations and fabrications by the defendants. The defendants maintain that these actions occurred due to Johnson's repeated violations of institutional rules governing inmate behavior. It is therefore clear that the defendants do not admit that the information contained in the behavior citation and disciplinary reports is either fabricated or false.

While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982). In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Johnson merely asserts that the defendants based the citation and disciplinary actions on false information. This does not state a claim for relief and the defendants are therefore entitled to summary judgment.

### D.  Access to Courts

Johnson complains that the actions of officer Gavins in supervising the law library denied him access to the courts. Prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court

17

expounded on *Bounds* and required that an inmate demonstrate the existence of an "actual injury" effecting his effort to pursue a nonfrivolous legal claim to demonstrate a denial of access to the courts.

Moreover, *Lewis* emphasizes that a *Bounds* violation is related to an inmate's lack of capability to present claims.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When an inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury.  *Lewis*, 518 U.S. at 356.

Johnson presents only conclusory allegations of a constitutional violation and fails to allege any shortcomings at Easterling which actually hindered his efforts to pursue his claims before this court.  The evidentiary materials submitted in this case demonstrate that during his confinement in general population Johnson had physical access to the law library  and went to the law library on a routine basis.  Although while confined in segregation and the restricted privilege dorm Johnson did not have physical access to the law library, the pleadings indicate that at all times while housed therein correctional officials allowed him access to legal materials and reference books acquired from the prison law library.

Johnson has failed to come forward with any evidence that the actions of Gavins

deprived him of the ***capability*** of pursing his claims in a federal civil action; rather, Johnson has demonstrated that he is proficient at presenting and arguing the claims of his choice to this court. Specifically, the record in this case demonstrates that Johnson has filed numerous and lengthy pleadings in this case including, but not limited to, motions for judicial notice, motions for extension of time, a motion to amend, other miscellaneous motions, responses to the special reports and various evidentiary materials. Consequently, nothing before the court indicates that the actions about which Johnson complains in any way improperly impeded his efforts to pursue nonfrivolous legal claims and, therefore, Johnson has failed to establish the requisite injury. *Lewis*, 518 U.S. at 356. In the absence of ultimate prejudice or disadvantage, the defendants are entitled to summary judgment on this claim. *See Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

### E.  Respondeat Superior

To the extent that Johnson seeks to impose liability upon the defendants under the theory of respondeat superior or on the basis of vicarious liability, he is entitled to no relief as "neither respondeat superior nor vicarious liability exists under § 1983." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla*., 402 F.3d 1092, 1116 (11th Cir. 2005); *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690-92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir.1993),

*cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. This case be dismissed with prejudice.

3. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 8, 2006 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding

precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

     Done this   26th  day of January, 2006.

                     **/s/ Delores R. Boyd**
                     DELORES R. BOYD
                     UNITED STATES MAGISTRATE JUDGE